**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

KURARAY AMERICA INC.,

    Plaintiff,

    v.

SEKISUI CHEMICAL CO., LTD.,

    Defendants.

Case No. 2:25-cv-589

## <u>OPINION & ORDER</u>

Before the Court is Defendant Sekisui Chemical Co., Ltd.'s motion to dismiss under Fed. R. Civ. P. 12(b)(1). ECF Nos. 19 (motion), 20 (memorandum). Because the plaintiff does not demonstrate a substantial controversy of sufficient immediacy and reality to warrant declaratory judgment relief, the motion will be **GRANTED**, and the case will be **DISMISSED**.

## I.   BACKGROUND

At this stage, the Court assumes the facts alleged in the complaint are true.[1] Kuraray Co., Ltd ("Kuraray Co.") is a Japanese entity with business in 32 countries,

---

[1] In its reply brief, the plaintiff explains that it raises both a factual and facial challenge to jurisdiction. ECF No. 29 at 5. Because the Court will dismiss the case on facial grounds, it need not reach the factual challenge. Therefore, "all the facts [alleged in the complaint] are assumed to be true" for purposes of assessing the facial challenge. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

However, the Court considers certain extrinsic documents that are integral to the complaint, such as the warning letter at the heart of the plaintiff's allegations as well as the patents at issue in this case. *Goines v. Valley Com'ty Servs. Bd.*, 822 F.3d 159,

including in the United States through Kuraray America, a subsidiary. ECF No. 1 ¶¶ 14, 16. Kuraray Co. manufactures and sells products in the interlayer film industry, including Trosifol® The Wedge Acoustic and Trosifol® The Wedge Acoustic Shadeband, which are manufactured by Kuraray Europe and Kuraray Korea, and then either directly sold or exported to other Kuraray entities to sell. *Id.* ¶ 15. Kuraray America sells these products in North America. *Id.* ¶ 16.

Sekisui holds patents related to interlayer film inventions, including: (1) Patent Family A, which encompasses 20 patents issued from 11 patent offices, spanning 16 jurisdictions, stemming from International Patent Publication No. WO2007/132777, ECF No. 20 at 6; ECF No. 21 ¶¶ 3–4; and (2) Patent Family B, which encompasses 13 patents issued from 10 patent offices, spanning 16 jurisdictions, stemming from International Patent Publication No. WO2017/057497, ECF No. 20 at 7; ECF No. 21 ¶¶ 5–6.

On July 30, 2024, Sekisui sent a warning letter to Kuraray Co. stating: "Our company holds patents filed in various countries under WO2007/132777. Of the products manufactured and sold by your company, at a minimum, 'Trosifol® The Wedge Acoustic' and 'Trosifol® The Wedge Acoustic Shadeband' . . . fall within the technical scope of our patents. Therefore, your manufacture and sale of your products

---

166 (4th Cir. 2016) ("[W]e may consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity."); *e.g.*, ECF No. 21-11 (warning letter), ECF Nos. 21-1–21-10 (patents and patent register website printouts regarding legal status of patents). The plaintiff does not dispute the authenticity of these documents.

constitutes an infringement of our patents." ECF No. 21-11 at 2 (certified English translation of Japanese letter). The letter asserted that Sekisui would "be forced to consider legal action" if Kuraray Co. did not meet certain demands within ten business days. *Id.* Kuraray Co. did not respond. ECF No. 20 at 9.

Thereafter, the parties engaged in a series of legal actions:

On August 30, 2024, Sekisui filed patent infringement actions in Korea, seeking an injunction against the manufacture and sale of the Trosifol® The Wedge Accoustic and Trosifol® The Wedge Accoustic Shadeband. ECF No. 1 ¶ 23; ECF No. 20 at 9. Sekisui asserted five Korean patents, including one from Patent Family A, one from Patent Family B, and three that do not belong to either family. ECF No. 1 ¶ 23 n.12. In September 2024, Sekisui also filed a parallel action in the Korean Trade Commission. *Id.* ¶ 24.

Second, on September 30, 2024, Sekisui filed patent infringement actions in Germany, alleging infringement by the same products. ECF No. 1 ¶ 19; ECF No. 20 at 9. Sekisui asserted the German parts of four European patents, including two from Patent Family A and one from Patent Family B. ECF No. 1 ¶ 19.

Third, in parallel to Sekisui's actions in Korea and Germany, Kuraray Europe filed nullity actions in the German patent court arguing that the patents asserted in Sekisui's infringement action are invalid. ECF No. 1 ¶ 21.

Fourth, on May 23, 2025, Kuraray Europe filed a similar nullity action in England. ECF No. 1 ¶ 22. "To avoid . . . discovery on these patents," Sekisui consented

3

to the revocation of the asserted European patents, offering declarations of their invalidity. *Id.*

Fifth, on July 11, 2025, "[b]ecause the ability to obtain discovery is extremely limited" in the German courts, Kuraray Europe sought discovery under 28 U.S.C. § 1782 in the District of Delaware to obtain discovery for use in the infringement and nullity proceedings. ECF No. 1 ¶ 21.

Finally, on September 17, 2025, Kuraray America initiated this case against Sekisui, seeking a declaratory judgment of the invalidity of six U.S. patents—five from Patent Family A and one from Patent Family B. ECF No. 1.

## II.    LEGAL STANDARD

### A.    Motions to Dismiss Under Fed. R. Civ. P. 12(b)(1)

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) challenges the court's subject matter jurisdiction. Such a motion can proceed in two ways: a "factual challenge," where the movant asserts that the complaint's subject matter jurisdiction allegations are untrue, or a "facial challenge," where the movant asserts that the complaint "fails to allege facts upon which subject matter jurisdiction can be based." *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (citation and quotation marks omitted). In a facial challenge, the "facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. U.S.*, 585 F.3d 187, 192 (4th Cir. 2009).

### B.    Declaratory Judgment Actions

Under the Declaratory Judgment Act (DJA), "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). To establish subject matter jurisdiction under the DJA, the dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests," be "real and substantial," and "admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (cleaned up).

"Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quotation marks and citation omitted). "An 'adverse legal interest' requires a dispute as to a legal right[,] for example, an underlying legal cause of action that the declaratory defendant could have brought or threatened to bring." *Arris Grp., Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1374–75 (Fed. Cir. 2011).

Federal Circuit law governs whether an actual case or controversy exists in an action for declaratory judgment of patent invalidity. *3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1377 (Fed. Cir. 2012). To establish a case or controversy, "more is

required than communication from a patent owner to another party, merely identifying its patent and the other party's product line," but "[h]ow much more is required is determined on a case-by-case analysis." *Id.* at 1378–79. "Rather than a purely subjective fear or the mere existence of a potentially adverse patent alone, the alleged injury at the root of most justiciable declaratory judgment controversies in the patent context is a restraint on the free exploitation of non-infringing goods[] or an imminent threat of such restraint." *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1339 (Fed. Cir. 2008) (quotation marks and citation omitted).

Finally, "[e]ven if there is a case or controversy, 'district courts possess discretion in determining whether and when to entertain an action under the [DJA], even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *3M*, 673 F.3d at 1376 (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995)); *see also MedImmune*, 549 U.S. at 136 (The DJA "provides that a court '*may* declare the rights and other legal relations of any interested party,' not that it *must* do so.") (quoting 18 U.S.C. § 2201(a)). "In deciding whether to entertain a declaratory judgment request, a court must determine whether resolving the case serves the objectives for which the [DJA] was created." *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 883 (Fed. Cir. 2008).

### III.   ANALYSIS

The plaintiff does not demonstrate that a substantial controversy of sufficient immediacy and reality exists to warrant declaratory judgment relief. And even if it did, the Court would exercise its discretion to decline to entertain this case.

### A.   Case or Controversy

Kuraray America alleges that a substantial controversy exists between the parties because of (1) the warning letter and (2) Sekisui's 2024 patent infringement lawsuits in Germany and Korea, and because (3) Sekisui "has made no commitment to forego patent enforcement actions in the United States." ECF No. 28 at 8–9. Therefore, Kuraray America represents that it filed its complaint "to continue its domestic operations without the fear of litigation." *Id.*

Without additional context, the warning letter *could have* been enough at the time it was sent to confer subject matter jurisdiction under the DJA.[2] Sekisui contends that the warning letter was "too generic to constitute an identification of any specific patents that would give rise to a substantial controversy" and that the "reference to 'our patents' did not mean, and should not objectively be interpreted as, 'all of our patents' or 'all of our patents filed in various countries under WO2007/132777.'" ECF No. 20 at 17. But the letter's reference to "various countries

---

[2] This is true at least for the five patents at issue in this case that issued from WO2007/132777. Patent-in-suit US10913244 (Count Six) was filed under International Publication Number WO2017/057497, which was not identified in the warning letter. ECF No. 20 at 8; *see* ECF No. 1 ¶¶ 87–109. So the warning letter could not have been enough to confer subject matter jurisdiction under the DJA for US10913244.

under WO2007/132777" undisputedly includes the U.S. ECF No. 20 at 6–7. The letter "identifies a specific patent family" that includes five U.S. patents, as well as specific products that Kuraray America sold. ECF No. 28 at 5. In other words, the letter "identifies [] specific patents[,] . . . products[,] . . . and [] demands," and "unambiguously gives Kuraray [] the option of either ceasing sales of the [specific products] or fac[ing] legal action." ECF No. 28 at 9–10.

However, the timeline and the history of litigation between the parties here show that there is no "immediacy and reality" to establish a sufficient controversy. *MedImmune*, 549 U.S. at 127; *see Allied Mineral Prods., Inc. v. Osmi, Inc.*, 870 F.3d 1337, 1339–40 (Fed. Cir. 2017) (collecting cases examining the litigation history between the parties when evaluating jurisdiction). Within two months of sending the warning letter to Kuraray Co., Sekisui filed enforcement actions in Korea and Germany; but since then (September 2024) it has not brought any additional related enforcement actions. ECF No. 1 ¶¶ 19–24; ECF No. 20 at 15–16. The complaint does not allege any affirmative actions by Sekisui against any Kuraray entity—let alone Kuraray America specifically—since September 2024, and Kuraray America's conclusive assertion that Sekisui's actions in Germany and Korea "make[] the United States the next step" is devoid of support. ECF No. 1 ¶ 25.

The facts in this case are analogous to those in *Allied Mineral Prods., Inc. v. Osmi, Inc.*, 870 F.3d 1337 (Fed. Cir. 2017), in which the Federal Circuit affirmed the district court's finding that there was no actual controversy under the DJA. In that case Allied, an American manufacturer, sought a declaration of non-infringement and

8

invalidity under the DJA against Stellar, a company that had sent warning letters to and subsequently sued two of Allied's Mexican customers for infringement. *Id.* at 1338–39. While Allied manufactured the products at issue in the infringement action, there was no actual controversy between the parties in the U.S. because Stellar "ha[d] not directed any actions towards Allied," had "limited its actions to Mexico," and had not "threatened or alleged infringement of the [U.S. version of the patent]." *Id.* Furthermore, there had "been no veiled threats of litigation or even any direct communication from Stellar to Allied" and "no allegations that Stellar ha[d] a history of litigating its patents in the United States." *Id.* at 1340.; *cf. Arkema Inc. v. Honeywell Int'l Inc.*, 706 F.3d 1351, 1358 (Fed. Cir. 2013) (U.S. litigation over "closely related" patents supports a finding of an active and substantial controversy between the parties under the DJA).

The same is true here: Kuraray America does not allege that Sekisui has a history of litigating its patents in the U.S., that it has directed any actions toward Kuraray America as distinct from Kuraray Europe or Korea, nor that it has communicated with or alluded to Kuraray America in any communications apart from the July 2024 warning letter to Kuraray Co. referencing "various countries under WO2007/132777." Furthermore, International Patent Publication No. WO2007/132777, which covers Patent Family A, contains 20 patents in 16 jurisdictions, of which Sekisui only chose to enforce three patents (15%) in two jurisdictions (12.5%). ECF No. 20 at 19. Given Sekisui's limited enforcement effort

almost two years ago, the reference to 'various countries under WO2007/132777' is not alone enough to establish immediacy or reality.[3]

Finally, that Sekisui has not "provided any assurance" such as "a covenant not to sue or a declaration of invalidity" in the United States does not impact the jurisdictional analysis because Kuraray America has not alleged that it has asked for such an assurance. ECF No. 28 at 14, 16–17; ECF No. 29 at 10; *cf. Prasco*, 537 F.3d at 1334 (explaining that the defendant's failure to sign covenants not to sue as requested by the plaintiff is relevant but not determinative to the subject matter jurisdiction analysis).[4]

## B.    Discretion Under the DJA

Kuraray America argues that the action "will serve a useful purpose in clarifying and settling the legal relations in issue" because Sekisui's conduct has "infected Kuraray America's business with uncertainty and insecurity." ECF No. 28

---

[3] Sekisui argues that the patents Kuraray America claims are invalid do not perfectly correspond to the patents Sekisui chose to enforce in Europe and Korea. ECF No. 20 at 24–25. But Kuraray America explains that the patents-in-suit all relate to the products Sekisui identified in the warning letter. ECF No. 28 at 12.

[4] Sekisui contends that Kuraray America's DJA suit is simply a pretext to obtain discovery to aid its nullity action in Germany. *E.g.*, ECF No. 20 at 11. Indeed, Kuraray Europe filed nullity actions in the English Patent Courts in May 2025 and a 28 U.S.C. § 1782 action in the District of Delaware in July 2025, and Kuraray America filed this case in September 2025. ECF No. 1 ¶¶ 21–22. And Kuraray America alleges that Kuraray Europe filed the Delaware case "to aid in the infringement and nullity proceedings" "[b]ecause the ability to obtain discovery is extremely limited" in Germany. ECF No. 1 ¶ 21. But that Kuraray "already properly requested" discovery in Delaware does not necessarily mean that this action is pretext. ECF No. 28 at 6. And though the timing of this suit, over a year after Sekisui's actions in Korea and Germany, and shortly after Kuraray Europe's nullity proceedings, is suspicious, for the purpose of the subject matter jurisdiction, it merely fails to establish immediacy.

at 17 (quotation marks and citation omitted). However, the complaint is devoid of allegations that Kuraray America faces a real choice between "either abandoning its [] products or running the risk of being sued for infringement." *Danisco U.S. Inc. v. Novozymes A/S*, 744 F.3d 1325, 1332 (Fed. Cir. 2014). Therefore, even if this case satisfied subject matter jurisdiction under the DJA, the Court would exercise its discretion to decline to hear it because "courts should exercise their discretionary jurisdiction with caution when doing so would raise serious questions about Article III jurisdiction, as this case does." *Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 202 (4th Cir. 2019); *see Wilton*, 515 U.S. at 282 ("[D]istrict courts possess discretion in determining whether and when to entertain an action under the [DJA], even when the suit otherwise satisfies subject matter jurisdiction prerequisites.").

## IV.    CONCLUSION

For the foregoing reasons, Defendant Sekisui Chemical Co., Ltd.'s motion to dismiss under Fed. R. Civ. P. 12(b)(1) (ECF No. 19) is **GRANTED**, and the case is **DISMISSED**.

The Clerk is **DIRECTED** to close the case.

**IT IS SO ORDERED**.

/s/

Jamar K. Walker
United States District Judge

Norfolk, Virginia
May 12, 2026

11